**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JOHN WILLIAM FROST**                                                              **PLAINTIFF**

**CASTLE CREEK EXPRESS, LLC**                              **PLAINTIFF IN INTERVENTION**

**v.**                                    **CASE NO. 4:08CV01824 BSM**

**MARSHALL C. YOUNG, et al.**                                                **DEFENDANTS**

<u>**ORDER**</u>

Having reviewed defendant Zurich American Insurance Company's ("Zurich") motion
to reconsider [Doc. No. 95] the July 20, 2011, order [Doc. No. 92] denying summary
judgment on behalf of Zurich and granting summary judgment on behalf of plaintiff John
William Frost, and having reviewed the record, the motion for reconsideration is granted in
part and denied in part. The motion for reconsideration [Doc. No. 95] is granted as to whether
the underinsured motorist ("UM") selection form executed by Castle Creek is valid.
Therefore, the UM policy has a maximum available benefit of $20,000. The motion is denied
as to the issue of whether Frost was covered under the Zurich policy. Additionally, intervenor
plaintiff Castle Creek Express, LLC's ("Castle Creek") motion for partial summary judgment
[Doc. No. 107] is denied as moot since all parties have stipulated to the issues raised. *See*
Doc. No. 117.

I. BACKGROUND

On July 16, 2007, Frost, a professional truck driver employed by Castle Creek, was
involved in an automobile accident in Pine Bluff, Arkansas. Order on Motions for Summary
Judgment [Doc. No. 92] at 2. For purposes of the present motions, it is undisputed that Frost

was acting in the course of his employment at the time of the accident and that defendant Marshall C. Young was solely at fault. *Id.* at 3. Young's insurance carrier paid the $100,000 policy limits to Frost, which is insufficient to compensate him for his injuries. *Id.* Frost, therefore, seeks to recover under the UM provisions of the insurance policy of his employer, Castle Creek. William Broyles, the primary owner of Castle Creek, has an insurance policy through Zurich that covers Castle Creek and other companies owned by Broyles ("the insured"). *Id.* at 9.

Castle Creek, Frost, and Zurich each filed separate motions for summary judgment on three separate issues. *See* Doc. Nos. 63, 68, and 71. Castle Creek argued that Louisiana law, as opposed to Arkansas law, should govern its subrogation claim. Doc. No. 63. Zurich and Frost disputed the amount of UM coverage available under the Zurich insurance policy and whether Frost was even covered under the policy. Doc. Nos. 68, 71. The following findings were made on July 20, 2011: (1) Castle Creek's subrogation claim is governed by Louisiana law; (2) Zurich failed to obtain a valid UM waiver from Castle Creek and the UM coverage available is equal to the underlying liability limits of the Zurich insurance policy, which is $2 million dollars; and (3) Frost is covered under the liability provisions of the Zurich insurance policy. *See* Doc. No. 92.

The present motion for reconsideration [Doc. No. 95] was filed by Zurich on August 17, 2011, in which it requests denial of Frost's motion for summary judgment and for a finding that Frost is not covered under the liability provisions of the Zurich policy. Zurich also requests summary judgment and a finding that the UM selection form executed by Castle

2

Creek is valid, such that the available UM coverage is $20,000. On December 8, 2011, Castle

Creek filed a second motion for summary judgment [Doc. No. 107] requesting that partial

summary judgment be granted on it's subrogation claim and for a finding that Castle Creek

is entitled to reimbursement for workers compensation, medical, and indemnity benefits paid

to Frost to date.

## II. ZURICH'S MOTION FOR RECONSIDERATION

A motion for reconsideration may be brought either: (1) to correct manifest errors of

law or fact, or (2) to present newly discovered evidence. *Arnold v. ADT Sec. Services, Inc.*,

627 F.3d 716, 721 (8th Cir. 2010). Zurich argues that its motion is brought "to correct clear

errors of law and fact in the July 20, 2011 order [Doc. No. 92]." Zurich's Brief in Support

of Motion for Reconsideration ("Zurich's Brf.") [Doc. No. 96] at 4.

A.     The UM Selection Form

Zurich's motion for reconsideration [Doc. No. 95] is granted as to whether the

underinsured motorist ("UM") selection form executed by Castle Creek is valid.  Therefore,

the UM policy has a maximum available benefit of $20,000.

Under Louisiana law, UM coverage is determined not only by contractual provisions,

but also by applicable statutes. *Duncan v. U.S.A.A. Insurance Company*, 2006-363, p. 4 (La.

11/29/06); 950 So. 2d 544, 547. "[T]he requirement of UM coverage is an implied

amendment to any automobile liability policy, even when not expressly addressed, as UM

coverage will be read into the policy unless validly rejected."  *Id*. "[T]he insurer bears the

burden of proving any insured named in the policy rejected in writing the [UM] coverages

equal to bodily injury coverage or selected lower limits." *Id*. 2006-363, p. 5; 950 So. 2d at 547.

Zurich states that the finding in the July 20, 2011, order [Doc. No. 92] that the UM selection form was invalid is clear error. Zurich's Brf. at 4.  It argues that contrary to the reasoning outlined in that order: (1) under Louisiana law, officers or directors of a corporation may make a decision with respect to UM coverage and thereafter direct lower level employees to execute the appropriate forms; (2) employee David Todd Ruple's printed name as authorized representative of the insured below his signature is not required by law for the UM selection form to be valid; and (3) the inclusion of "N/A" on all of the blanks of the UM selection form except for the blank selecting reduced UM limits of $20,000 does not render the UM selection form invalid under Louisiana law.

Ruple's signature on the UM selection form validly executed the insured's decision to have reduced UM limits of $20,000 and the absence of his printed name underneath his signature did not render the UM selection form invalid. Frost argues that since "Mr. Ruple was not the insured nor did he have the authority to make meaningful selections/rejections of UM coverage," his signature could not have properly executed the UM selection form. Frost's Response ("Frost's Res.") [Doc. No. 99] at 28.  It is undisputed, however, that the insured gave Ruple the authority to sign the form on its behalf. July 20, 2011 Order [Doc. No. 92] at 10.

Frost fails to point to any Louisiana authority supporting its argument that Ruple's act of signing the UM selection form on behalf of the insured renders the UM selection form

invalid. Instead, Frost relies on a series of cases invalidating UM selection forms where an agent from the insurance company, as opposed to a representative for the insured, signed the forms. *See* Frost Res. at 29. Again, it is undisputed that the insured gave Ruple the authority to sign the forms, and the absence of evidence or law indicating otherwise, indicates that Ruple's signature on behalf of the insured, following the insured's express permission to execute the form, did not render the UM selection form invalid.

Further, the absence of Ruple's printed name from the UM selection form that included his valid signature did not render the UM selection invalid. In *Banquer v. Guidroz*, the Louisiana Supreme Court expressly held that "as long as the name of the named insured is printed and the legal representative signs the form [the requirements of a valid UM selection form] are satisfied" 2009-466, p. 4 (La. 5/15/09); 8 So.3d 599, 562. Here, both the insured's printed name and the signature of its authorized agent appeared on the UM selection form.

Finally, in a recent case, the Louisiana Court of Appeal addressed whether the placement of "N/A" in the blanks of a UM selection clause has any bearing on the validity of the clause. *Walker v. Walker*, 2010-1865, slip op. (La. App. 1 Cir. 5/6/11). In that case, "the UM selection form in question was pre-filled with N/A in all blanks except for the blank for rejection of UM coverage[.]" *Id.* at 4 (internal citations omitted). The insured's intent was to select lower limits for UM coverage and "the form in question was filled out in response to communications by [the insured] that it [wanted lower limits for its] UM coverage." *Id.* at 5. The Louisiana Court of Appeal held that the UM selection form was valid based on

5

"clear and unmistakable evidence" that the insured "knowingly rejected UM coverage." *Id.* at 7.

Just as in *Walker*, the insured herein specifically directed Zurich to fill out the UM coverage form to reflect the insured's preference as to UM coverage. The only distinction between *Walker* and the present case is that in *Walker* there was a dispute as to whether the insured knowingly selected its UM coverage. Here, it is undisputed that the insured "actually intended to, and did in fact, select UM coverage in the minimum amount under Louisiana law, $20,000." July 20, 2011 Order [Doc. No. 92] at 9.

Frost, in his response, relies on *Johnson v. Government Employees Ins. Co.*, 2007-1391 (La. App. 3 Cir. 4/9/08); 980 So. 2d 870, to argue that the UM selection form was invalid because it was pre-marked by the Zurich insurance agent. Frost's Res. at 29. The *Johnson* court held that the pre-marked UM form was invalid because it left the insured with no choice but to reject UM coverage. *Johnson*, 2007-1391 at 8, 980 So. 2d at 876. *Johnson* is distinguishable because the insured in that case testified that there was no discussion with the agent as to what level of UM coverage he wanted. *Id.* The insurance agent in *Johnson* essentially chose what coverage the insured would have. That is the opposite of what happened here, wherein the insured specifically told Zurich what UM coverage it wanted, and Zurich filled out the form according to the insured's specific instructions.

For the reasons set forth above, Zurich's motion to reconsider the determination that the UM selection form is invalid is granted. The UM selection form executed by Castle Creek is valid and the available UM coverage under the Zurich insurance policy is $20,000.

B.    Whether Frost is Covered

Zurich's motion to reconsider the determination that Frost is covered under the policy is denied.

"Under the plain language of LSA-R.S. 32:900(B)(2), there is a mechanism for motor vehicle liability policies to cover not only the insured specifically named in the policy, but also to cover any other driver who drives with the permission of the named insured." *Sensebe v. Canal Indemnity Co.*, 2010-0703, p. 9 (La. 1/28/11); 58 So. 3d 441, 447. It is undisputed that Frost was driving the truck in question with the permission of the named insured, as all parties have agreed that Frost was acting in the course and scope of his employment when the accident occurred. Louisiana statutory law mandates "that the mechanism for coverage of permissive drivers is not optional, but mandatory." *Id.* As a result, there is no valid argument that Frost was not covered under the Zurich policy.

Therefore, Zurich's motion for reconsideration as to whether Frost is covered under the policy is denied.


III. CASTLE CREEK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Castle Creek's motion for partial summary judgment [Doc. No. 107] is denied as moot. The parties have stipulated [Doc. No. 117] to the issues raised in this motion. Specifically, the parties agree and stipulate that Castle Creek has a subrogation claim in excess of the $100,000 policy limits of the defendants Young and Eureka Construction. As the July 20, 2011, order [Doc. No. 92] held, Louisiana law governs Castle Creek's

subrogation claim, and therefore, the parties agree and stipulate that Castle Creek will have a right to reimbursement of medical expenses and indemnity benefits paid to Frost by the tortfeasor, subject to a credit for Frost's attorneys' fees and litigation costs. Doc. No. 117 at ¶ 4.

## IV. CONCLUSION

For the reasons set forth above, Zurich's motion for reconsideration [Doc. No. 95] is granted as to the UM selection form issue and denied as to the Frost coverage issue. Additionally, Castle Creek's motion for partial summary judgment [Doc. No. 107] is denied as moot since all parties have stipulated to the issues raised. *See* Doc. No. 117.

IT IS SO ORDERED this 1st day of February 2012.

_____
UNITED STATES DISTRICT JUDGE